**Louis M. RAY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 23140.**

United States Court of Appeals
Fifth Circuit.

March 23, 1967.

James D. Sparks, Robert C. Cudd, III, Thompson, Thompson & Sparks, Monroe, La., for appellant.

Edward L. Shaheen, U. S. Atty., Stephen Wizner, Sp. Atty., Dept. of Justice, D. H. Perkins, Asst. U. S. Atty., Shreveport, La., Michael R. Sonnenreich, Dept. of Justice, Washington, D. C., for appellee.

Before JONES, WISDOM and GOLDBERG, Circuit Judges.

JONES, Circuit Judge:

The Small Business Administration, created by Congress, is an agency of the United States and is known in Federal jargon as S.B.A. To stimulate the national economy and, in particular, the small-business segment thereof a program was set up in S.B.A. to supply such financing for small businesses as might not be otherwise available in adequate supply. 15 U.S.C.A. § 671. The act of Congress provided that small business investment companies, chartered under state law, having articles of incorporation approved by S.B.A. might be issued a license to operate under the Federal act, 15 U.S.C.A. § 681 et seq. S.B.A. is authorized to purchase the debentures of small business companies and to make loans to and acquire the obligations of such companies. Small business investment companies are authorized to finance or refinance small-business concerns to the extent permitted by and subject to the limitations of the statute.

S.B.A. like most, perhaps all agencies of the United States, is empowered to prescribe regulations, and in particular has authority to prescribe regulations governing the operations of small business investment companies. By statute it is provided that "Each small business investment company shall be subject to examinations made by direction of the Administration [S.B.A.] by examiners selected or approved by the Administration * * *." 15 U.S.C.A. § 687(c). The S.B.A. Regulations contain the following:

"(a) Each licensee shall be subject to examination by S.B.A.

"(b) Such examinations shall cover any and all matters as determined by S.B.A., and shall be conducted by S.B.A. examiners or by any examiners selected or approved by S.B.A.

\* \* \* \* \* \*

"(d) The time and manner of conducting any such examination shall be determined by S.B.A. in each case." 13 CFR 1966, Supp. 42 § 107.801.

The appellant, Louis M. Ray, was the organizer, principal stockholder and the managing officer of First Louisiana Investment Corporation, herein called FLIC. It was licensed by S.B.A. as a small business investment company. Its place of business was in Monroe, Louisiana. On June 7, 1963, two S.B.A. examiners, Messrs. Schutz and Moore

were in Monroe for the purpose of conducting an examination of FLIC. S.B.A. had previously received information which suggested that the operations of FLIC were not being conducted as the law required and that other corporations, controlled by Ray, might be involved in prohibited transactions with FLIC. Before going to the FLIC offices, the examiners went to the court house where they obtained additional information about some of the Ray controlled corporations which furnished further grounds for a belief that FLIC was not being operated in a lawful manner.

At the FLIC offices the examiners found J. D. Sims, a clerk and typist of FLIC. The examiners identified themselves. Sims told them that Mr. Ray and Mr. Gentry, his accountant, were in Florida and he could not show them the FLIC records. Sims got Ray on the telephone and Schutz stated who he was and his purpose. Ray refused to permit any examination until his return from Florida. Schutz gave the telephone back to Sims who talked further with Ray. While Sims was on the telephone, the examiners crossed a corridor to an office of Gentry and his partner Williams which was used almost entirely for handling the business of FLIC and other corporations controlled or dominated by Ray. There on the floor the examiners found journals and ledgers of FLIC and they proceeded to examine them. From the testimony of Schutz it would appear that Sims acquiesced in the examination. From the testimony of Sims it would appear that he strenuously objected to the examination. We do not think it matters. In the room were boxes or cartons which, it seems, were marked with names of corporations, one of which was FLIC and the others were of Ray controlled or dominated companies which were borrowers from FLIC. The boxes contained cancelled checks and bank statements. These were examined by Schutz and Moore. About five o'clock in the afternoon Sims stated that he had to lock up. Schutz and Moore left. On the following morning they reappeared and were informed by Sims that they could not see any records in the absence of Ray. Schutz and Moore departed.

Some days later, two weeks perhaps, Schutz returned to Monroe accompanying Stanley Levy, an investigator of S.B.A. The appellant J. D. Ray was at his FLIC office. FLIC records were further examined. Ray refused to permit examination of the books and records of the other companies. Levy then issued administrative subpoenas duces tecum to Ray for the production of books and records of the other companies. Application was made to the United States District Court for an order to require obedience to the subpoena. Testimony was taken. While the case was pending the United States brought an action against FLIC and Ray alleging a default in the discharge of the obligations of FLIC to S.B.A. and charging that funds have been wrongfully diverted to Ray. A money judgment, injunction and receivership were sought. A preliminary injunction was granted and a receiver was appointed. The appointment of a receiver was affirmed. First Louisiana Investment Corporation v. United States, 5th Cir. 1965, 351 F.2d 495. The receiver took possession of the books and records of FLIC. A Federal grand jury in the District of Columbia began an investigation of the operation of FLIC. The records in the possession of the receiver were made available to it and to the Department of Justice. An indictment against Ray, in seven counts, for mail fraud, in connection with the operation of FLIC, was returned by the grand jury in the District of Columbia. The case was transferred to the Western District of Louisiana. The proceeding for the enforcement of the administrative subpoenas duces tecum was dismissed as moot. Ray was convicted on all counts of the indictment. He was sentenced to fourteen months imprisonment on each of the first six counts, to run concurrently, with sentence suspended on the seventh count. Before us is the appeal from the conviction and sentence.

It is contended by the appellant that the examination by Schutz and Moore of June 7, 1963, was "a brazen and illegal search" made "in flagrant disregard of the rights guaranteed by the Fourth Amendment" and subsequent actions of S.B.A. to procure and make use of the "tainted fruit" of the wrongful search must be held to be violations of guaranteed rights and as unavailable for the procuring of an indictment and conviction. The district court did not pass upon the legality of the June 7, 1963 examination, but held that the evidence used was obtained by means independent of the June 7, 1963, examination.

■■ The appellant opens his attack upon the examination of June 7, 1963, by quoting from the opinion of Mr. Justice Holmes in the *Silverthorne* case, the following:

"The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them, that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A.1915B. 834, Ann.Cas.1915C, 1177, to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduced the Fourth Amendment to a form of words. 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, L.R.A. 1915B. 834, Ann.Cas.1915C. 1177. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." Silverthorne Lumber Co. v. United States, 251 U.S. 385, 391–392, 40 S.Ct. 182, 64 L.Ed. 319, 24 A.L.R. 1426.

The Government picks up where the brief of Ray purposefully leaves off, and the Government continues the quotation:

" * * * this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others * * *." 251 U.S. 385, 392, 40 S.Ct. 183.

An unnamed Western judge has been quoted as saying that "A corporation has no pants to kick or soul to damn." Whether so or no, Silverthorne teaches that a soulless corporate entity may have as its home a castle in which it may defy the Crown and deny the Sovereign the right to cross its threshold. If the Silverthorne rule should be here controlling the Court would be required to decide whether the portion quoted by Ray is the applicable law or whether the guide is to be found in the portion excerpted by the Government. The situation here is different. FLIC was doing business under a Federal license and was conducting its business in large measure with Federal funds. In providing for such businesses as FLIC was authorized to conduct, Congress provided that the licensed corporations should be subject to examinations by S.B.A. examiners and a validly promulgated regulation permitted S.B.A. to determine the time and manner of conducting such examinations. Small business investment companies are regulated business enterprises. It seems to be well established that:

"Where the government validly regulates any business, it has a right to include in its regulations that certain records be kept open to official inspection for the purpose of enabling the agency charged with the administration of such regulations to perform its functions, or of ascertaining whether an individual subject to such regulations is complying therewith, or of ascertaining other pertinent facts related to the regulation of such business; and

the agency may be authorized to exercise this power regardless of whether the business involved is a public utility and regardless of whether there is any preexisting probable cause for belief that there has been a violation of law." 79 C.J.S. 803. Searches and Seizures § 36.

"A corporation is chartered with special powers only. Its creator, the State, may examine into its records to see whether or not the privileges have been abused. Our dual form of government necessarily authorizes the United States to exercise these powers [of examination] in the vindication of its own laws." United States v. Bausch & Lomb Optical Co., 321 U.S. 707, 726–727, 64 S.Ct. 805, 88 L.Ed. 1024. See United States v. Morton Salt Co., 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401; Davis v. United States, 328 U.S. 582, 66 S.Ct. 1256, 90 L.Ed. 1453; Cooper's Express, Inc. v. I.C.C., 1st Cir. 1964, 330 F.2d 338.

■ The S.B.A. examiners were in the valid exercise of their duties in making an examination of the books and records, and other papers of FLIC, on June 7, 1963. The right of the S.B.A. examiners to inspect books, records and papers of FLIC was not dependent upon the presence of Ray, its principal officer and principal stockholder. The existence of the right to make their examination was not contingent upon the data being in the office of the company. Whether the room in which the FLIC records were found was a part of the offices of FLIC or an office of its accountants is immaterial for the purposes of our decision. The evidence would have justified an inference that the room was a part of the FLIC office. There was no breaking and entering of the room where the records were found. The door was open and the examination there of the FLIC records found there was proper.

■■ A more serious question exists as to the validity of the examination of the records and documents of corporations which were controlled by Ray and used by him in illegal transactions with FLIC. These records and documents were found in the room with the FLIC records and, to some extent, were commingled with them. Although the point it doubtful, we assume that Ray is not precluded, by his contention that the records were in a room not occupied by FLIC, from asserting that the examination of such records was an invalid search. See 2 Wharton Criminal Evidence 12th Ed. § 700. It can be plausibly argued that the records of the other corporations, borrowers from FLIC and controlled by Ray, which were relevant to the examiners' investigation, were properly subjected to their search. Cf. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, reh. den. 362 U.S. 984, 80 S.Ct. 1056, 4 L.Ed.2d 1019. But aside from these considerations, it clearly appears from the data procured by the lawful examination of the FLIC records and documents that the other corporations were being used by Ray for the purpose of violating the law in the operation by him of FLIC. This being so, there was reasonable cause for requiring the production of the records of the other corporations. As noted in Silverthorne Lumber Co. v. United States, supra, even if the facts disclosed by the records of the other corporations were first disclosed by an unlawful search, they may nevertheless be proved if made known from an independent source. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307.

The only ground asserted by the appellant for reversal of his conviction is that the examination of June 7, 1963, was an unlawful search and the tainted fruit of the search caused his indictment and conviction. The trial court held the evidence admissible. We agree, although for a somewhat different reason than that of the district court. Its judgment is

Affirmed.