**ASSOCIATES DISCOUNT COR-
PORATION**

v.

**Louis M. RAY.**

**Civ. A. No. 10258.**

United States District Court,
W. D. Louisiana,
Monroe Division.

April 14, 1972.

Hayes, Harkey & Smith, Louis D. Smith, Monroe, La., and George E. Herendeen, South Bend, Ind., for plaintiff.

Hewitt B. Johnson, Monroe, La., for defendant.

PUTNAM, District Judge.

MEMORANDUM OPINION

Associates Discount Corporation, a foreign corporation organized under the laws of Indiana, sues defendant, L. M. Ray, a citizen of Louisiana, residing in Monroe, for a balance due on a note executed by L. M. Ray Corporation on August 22, 1962, in the principal sum of $150,000.00, payable in semi-annual installments of $18,750.00 each, commencing February 22, 1963, with interest at the rate of 8% per annum from maturity until paid. Defendant executed this note as president of the debtor corporation. The note was secured by a deed of trust of certain real estate owned by L. M. Ray Corporation in Mississippi. At the time of suit the balance due was in the sum of $98,868.- 84, with interest at the rate of $21.67 per day from June 14, 1966, plus $2,000.- 00 attorneys fees, as fixed by judgment of the United States District Court for the Middle District of Florida, Orlando Division, in the matter entitled Associates Discount Corporation v. Realty Construction Associates, Inc., bearing case No. 64–67–Orl–Civ. of that court, said judgment being dated April 10, 1967. This decision is unreported but copies of the findings and conclusions

of the Court and the judgment itself are in this record.

Briefly put, we find the pertinent facts to be as follows:

1. During 1961 the L. M. Ray Corporation borrowed some $244,000.00 from plaintiff, this note being signed by defendant as president of the corporation and in his individual capacity. It was secured by a chattel mortgage and note and other collateral, the nature of which is not clear from the record. Within a very short time, the corporation defaulted on its payments. Ray was continuously in arrears; the arrangement, from plaintiff's point of view was unsatisfactory.

2. In an effort to better its financial position, plaintiff took the note sued on in August, 1962, after Ray made a $60,-000.00 payment in cash reducing the loan, and agreed that the deed of trust on the Mississippi lands would be substituted as security. Mr. Ray did not sign this note individually. In fact, by letter dated August 15, 1962, he specifically pointed out to plaintiff that he would not be personally liable for payment of this debt.

3. Prior to execution of the note in suit, defendant, as dominant stockholder in L. M. Ray Corporation, Charmingdale Bus Company, Inc. and Charmingdale Homes, Inc., proposed a merger of these companies into a fourth corporation, Realty Construction Associates, Inc. The merger agreement and charter of the new corporation was filed for record in Ouachita Parish on July 31, 1962. It did not become effective, however, until February 27, 1963, when it was filed in the office of the Secretary of State of Louisana. Defendant did not disclose these plans to plaintiff, nor is it shown that he concealed them. In fact, Associates' representative, Mr. McCue, inspected the books of Mr. Ray's various corporations himself, caused credit investigations to be made and made a personal inspection of the Mississippi lands given as security for the new note. The decision to take the present note and mortgage in lieu of the old note and its collateral was made deliberately and was, as we have said, an attempt on the part of plaintiff to make the best of a bad situation.

4. Thereafter, Realty Construction Associates, Inc., merged with Realty Construction Associates, Inc., a Florida corporation, entirely different from the Louisiana corporation of the same name. The Florida suit mentioned above granted judgment in favor of Associates on the note in question against Realty Construction (Florida).

5. All of the stock of L. M. Ray Corporation was surrendered and marked cancelled on August 31, 1962, and the stock of Realty Construction (Louisiana) issued on the same day. When this loan was made, L. M. Ray Corporation still enjoyed corporate existence. Defendant transferred all of the stock in Realty Construction (Louisiana) to Realty Construction (Florida) on February 25, 1963. As noted by the court in the Middle District of Florida, the debt of L. M. Ray Corporation was transferred with its assets.

6. The books of all of these corporations were kept in Monroe, Louisiana, before and after the various mergers, including those of the Florida concern. Although he testified that he held only one share in Realty Construction (Florida), Mr. Ray seems to have effectively controlled the short lived destiny of this entity, as well as L. M. Ray Corporation, Charmingdale Bus and Charmingdale Homes.

7. It was the testimony of Mr. Herendeen, General Counsel for plaintiff, that he sat in on one of the final meetings between defendant and plaintiff's representatives, after the agreement to substitute the present note for the original one, and he further stated that it was "apparently" the agreement between Ray and plaintiff that he would execute a continuing guaranty of the new note, but that he declined to do so at the time the matter was closed because it would prejudice his dealings with one of the local banks. The guaranty was not signed, nor did Associates,

to his knowledge, ever seek to require Ray to sign this guaranty at a later date.

## CONCLUSIONS

Defendant has built up an unenviable track record in the courts of this State. Counsel for plaintiff point to cases involving his dealings with L. M. Ray Corporation, Shreveport Sash & Door Co. v. Ray, 159 So.2d 434 (La.App. 1963); which is not a decision on the merits but involved the sufficiency of the allegations made in plaintiff's petition to sustain a suit against Ray personally for a debt of the L. M. Ray Corporation; the involuntary receivership discussed in First Louisiana Investment Corp. v. United States, 351 F.2d 495 (5 Cir. 1965), wherein First Louisiana Investment, another wholly owned and controlled corporation of defendant was involved, which finally led to the indictment, prosecution and conviction of defendant for mail fraud practiced upon the Small Business Administration during the course of Ray's manipulations of the affairs of that company. See: Ray v. United States, 374 F.2d 638 (5 Cir. 1967).

It will be seen that the First Louisiana Investment Corporation (FLIC) affair was in progress during the time of or just after the first loan defendant obtained from Associates. In 1962 when the substitute loan was made, the "assets" of L. M. Ray Corporation, merged into the Realty Construction (Louisiana), and Realty Construction (Florida) were stock in or receivables of FLIC. (See testimony of Mr. Gentry, and balance sheets of the Ray corporations in connection therewith.)

It is readily apparent that Associates' original loan to L. M. Ray Corporation in the sum of $244,000.00 ($44,000.00 of which was interest and carrying charges) was, indeed, of doubtful worth, and that plaintiff, after having credit investigations made of Mr. Ray and his corporations in 1962 was ready to accept the $150,000.00 note in lieu thereof with tangible—touchable—visible lands in Mississippi under a deed of trust as collateral therefor, and did so without the personal, and at that time worthless, guaranty of defendant.

Our conclusion is that the various corporate manipulations of this defendant did not result in any prejudice to the new note given to plaintiff in 1962, that he refused to give his personal guaranty either as maker, endorser or guarantor for the payment thereof, and that Associates accepted the new note for exactly what it was. Plaintiff's argument that the corporations were but the alter ego of Ray, and that the company was misled by his "representations" to them, are not supported by the preponderance of the evidence in this case. There are no specific instances of conduct on defendant's part to which plaintiff can point to establish fraud practiced upon it by Ray. The fact that Ray was manipulating his various corporations to the detriment of SBA and in a fraudulent manner with respect to that agency is not proof of fraud upon Associates. As is reflected in Ray v. United States, supra, the SBA investigation was commenced on reports of violations of the loan agreement received by it prior to June, 1963. It would seem that, with the extensive record made up in the receivership of FLIC, filed in this court on February 2, 1964, see First Louisiana Investment Corp. v. United States, supra, which involved all of these Ray corporations, firm evidence of unfair business practices against Associates would be readily available, if they in fact exist.

For the foregoing reasons, we render judgment in favor of defendant.