159 So.2d 434 (1963)
SHREVEPORT SASH & DOOR COMPANY, Inc., Plaintiff-Appellant,
v.
Louis M. RAY, L. M. Ray Corporation and Andrew J. Gentry, Defendants-Appellees.
No. 10038.
Court of Appeal of Louisiana, Second Circuit.
December 6, 1963.
Rehearing Denied January 9, 1964.
*435 Goode & Dietz, Shreveport, Hayes, Harkey & Smith, Monroe, for appellant.
Thompson, Thompson & Sparks, Monroe, for appellees.
Before HARDY, GLADNEY and BOLIN, JJ.
GLADNEY, Judge.
The plaintiff secured a judgment against Magnolia Builders & Supply Company, Inc., and alleging that the named defendants fraudulently diverted the assets of the debtor corporation, it brought this action to hold each of the defendants individually liable for payment of the debt owed to it. Alternatively, plaintiff prays that the L. M. Ray Corporation be required to return to Magnolia its assets allegedly wrongfully taken from it. Named as defendants are L. M. Ray, L. M. Ray Corporation and Andrew J. Gentry. The action was defended by pleading on behalf of L. M. Ray and L. M. Ray Corporation an exception of no cause of action; on behalf of Gentry an exception of no cause and no right of action; and on behalf of Ray, Ray Corporation and Gentry, pleas of prescription or peremption of one year. The exceptions of no cause of action filed by Ray and Gentry and the exception of no right of action of Gentry were sustained, and the remaining exceptions and pleas of prescription were overruled. Plaintiff has appealed.
For a cause of action the petition alleges that L. M. Ray was at all times mentioned *436 as the President, Chairman of the Board of Directors, and spokesman of some ten different corporations, included among which were Magnolia Builders & Supply Company, Inc. and L. M. Ray Corporation;[1] that Andrew J. Gentry, the named secretary of the afore referred to corporations, was a nominal director and stockholder, but a mere figurehead in such positions and was dominated and controlled by defendant Ray; that the business affairs of all of said corporations were conducted in the same offices in Monroe, and they used the same personnel and staff of employees; that there was an identity of interests between L. M. Ray and each of his corporations and to all intents and purposes L. M. Ray was and is the owner thereof; that as a result of a series of mergers and consolidation the L. M. Ray Corporation succeeded to the assets, liabilities and obligations of the merged and consolidated corporations; that Magnolia ceased operations in December of 1958, at which time it was indebted unto the plaintiff, after which certain transactions were made with the intent to defraud the creditors of Magnolia and constituted preferential payments to defendants to the detriment of petitioner as a creditor; and that the transactions, ten in number, as described in detail in the petition, were part of a fraudulent scheme and device to defraud plaintiff as a creditor by disposing of Magnolia's assets and placing them beyond the reach of its creditors. It is charged further that the transfers of the assets from Magnolia were made when Magnolia was indebted to plaintiff and when it had ceased operations; that the fraudulent transfers rendered Magnolia insolvent; that the intent and purpose of the transfers were for the purpose of conferring preferential treatment to the defendants; and that the result caused material detriment to appellant. It is also alleged that Magnolia was organized by the defendant Ray in such a manner that it was undercapitalized, or could be managed to the detriment of its creditors, and thereby Ray was enabled to withdraw and dispose of to his own benefit the capital assets of said corporation and leave a mere corporate shell for those creditors of the corporation who were not "affiliated companies" and "solely owned" by defendant Ray.
Consideration of an exception of no cause of action requires that the well pleaded allegations of the petition must be accepted as true for the purpose of the exception. Authorities to this effect are legion.
It is contended by counsel for appellant that the petition avers four separate and distinct causes of action: (1) that Magnolia was the alter ego of Louis M. Ray, who was dominantly in control of ten corporations, and because of fraudulent transfers he is liable individually for plaintiff's claim, notwithstanding the screen of Magnolia's corporate entity; (2) that a cause of action is provided under LSA-R.S. 12:27 against Ray as a director or stockholder effecting an unlawful payment or return of assets; (3) that a director is liable for breach of his fiduciary relationship to corporate creditors in milking the debtor corporation of its assets, and giving himself preferential treatment in the distribution of the corporate assets; and (4) a cause of action is given by the simple equity remedies available under Articles 21 and 3183 of the LSA-Civil Code.
After carefully reading the well pleaded allegations of the petition, we are of the opinion appellant has stated a cause of action against L. M. Ray, particularly under the alter ego doctrine which has long been recognized in our jurisprudence.
*437 Thus, it was said in Keller et al. v. Haas, et al., 202 La. 486, 12 So.2d 238 (1943):
"It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility." (Authorities cited)
The "doctrine of alter ego" simply passes liability on to the individual who uses the corporation as an instrument in conducting his own personal business, and personal liability springs from fraud perpetrated not on the corporation but on the third persons dealing with the corporation. In Lindstrom v. Sauer, La.App., 166 So. 636 (Orl.1936), it was held that where one who incorporates himself for convenience, being in truth the sole owner of the corporation, and who conveys the good will of that corporation, may not thereafter in answer to a suit for damages by virtue of his personal wrongdoings, cloak himself behind the corporate entity he has created in order to shield himself from personal responsibility. In that case Judge McCaleb, as the organ of the court, made reference to authorities where individuals had formed corporations for the purpose of using the screen of corporate entity to absolve themselves from responsibility. From one of these, Heard v. Monroe Sand & Gravel Co., 9 La.App. 568, 121 So. 642 (2d Cir. 1928), Justice Odom is quoted:
"Our conclusion is, and we hold, that the defendant corporation is bound to the same extent that Stephenson himself was bound, not solely upon the ground, as argued by counsel for plaintiff, that there was an implied assumpsit or a quasi contract, but upon the ground that a consideration of all the facts and circumstances connected with the formation of the corporation, and its subsequent management, lead irresistibly to the conclusion that the business carried on by the corporation was in fact but a continuation of Stephenson's business under a new guise, a merger of his private business into a corporation of which he was the sole managing head and director, and of which he was practically the sole owner."
Continuing, Judge McCaleb, in Lindstrom & Sauer, supra, stated:
"The only difference that may be drawn between the facts of the case above quoted and the allegations of the petition in the case at bar is that, in the Heard case, Stephenson contracted the obligation and afterwards formed a corporation of which he was the true owner and sought to hide behind the corporate entity in order to escape liability; whereas, in the case at bar, Sauer had previously formed a corporation for his convenience, and, after conveying the good will of that corporation, seeks to cover behind the corporate veil in respect to his personal liability, where he has by his actions deprived the plaintiff of certain acquired rights which plaintiff, by virtue of his purchase, was entitled to enjoy."
Justice Rogers in Fudickar v. Inabnet, et al., 176 La. 777, 146 So. 745 (1933) observed that if the provisions of Act No. 250 of 1928, the Louisiana Corporation Act, were not broad enough to grant a right of action to a creditor against former directors of a corporation after liquidation of the corporation: "[W]e think plaintiff is entitled to a remedy under the equity powers conferred upon the courts of the state by article 21 of the Civil Code, particularly in view of article 3183 of the Civil Code, which declares, `The property of the debtor is the common pledge of his creditors.'" See also Derbes, et al. v. Till, 13 La.App. 495, 128 So. 196 (Orl. 1930).
Following the rationale of the preceding authorities we are of the opinion that plaintiff has stated a cause of action against L. M. Ray.
*438 By reason of statutory limitations upon personal liability the directors and officers of a corporation do not purport to bind themselves individually as they do not incur personal liability for debts of the corporation. The courts have made an exception to this rule in cases of fraud, malfeasance and criminal wrongdoings. Ridgway Company, Inc. v. Marks, La.App., 146 So.2d 61 (4th Cir. 1962). The application of the exception arises when an individual owning a majority of the stock in the corporation has utilized the corporate entity as a screen for the purpose of individually practicing fraud or deception upon the public or the creditors of the corporation. National Surety Corporation v. Pope, La. App., 147 So.2d 239 (4th Cir. 1962). It is seriously contended that our courts have restricted the right of a personal action against the corporation to instances where a business has been incorporated with the deliberate object or purpose of evading the specific contractual obligations such as occurred in Keller et al. v. Haas, et al., 202 La. 486, 12 So.2d 238 (1943); Meraux v. R. R. Barrow, Inc., 219 La. 309, 52 So.2d 863 (1951); Lindstrom v. Sauer, La.App., 166 So. 636 (Orl.1936); Superior Oil Company v. Baltar, et al., 181 La. 908, 160 So. 626 (1935); Wilson v. Lagasse, et al., 14 La. App. 463, 127 So. 17 (1930); and Heard v. Monroe Sand & Gravel Company, Inc., 9 La.App. 568, 121 So. 642 (2d Cir. 1928). In each of the cited cases the corporation was found to be no more than a continuation of the individual business of and into which the individual had merged his private business. It was held that the individual could not thereby cloak himself behind corporation entity to shield himself from responsibility.
It is alleged herein that the several corporations created by Ray were formed prior to the debt incurred by Magnolia and herein sued upon. Forasmuch as each one of the separate corporations was alleged to be completely under the control of Ray, it must be conceded that Ray occupied as advantageous a position to practice an intended fraud as if he were manipulating his personal property without benefit of the corporate veil. The fact that he may be subjected to personal liability herein for a corporate debt can only arise because of some wrongful act or fraud, which we find was sufficiently alleged in the petition, as to the personal liability of L. M. Ray.
In Alliance Trust Company, Ltd. v. Streater, et al., 182 La. 102, 161 So. 168 (1935), Justice Odom, speaking for the majority of the court, said:
"In either event, the organization of this private corporation, the transfer to it by Streater of all the property he owned in exchange for practically all its capital stock, cannot reasonably be viewed otherwise than as schemes, subterfuges, or devices either to give an unfair preference or to escape payment of his debts. The law, as stated in the Civil Code, is that the property of a debtor is the common pledge of his creditors (article 3183) and that every act done by the debtor with intent of depriving his creditors of the eventual rights which they have upon it is illegal (article 1969), and neither this court nor any other, so far as we know, has ever permitted a debtor to resort to such schemes or devices for evading his debts.
"A creditor's remedy in cases like this is either to have the transfer of the debtor's property to the corporation set aside as a fraudulent conveyance or to obtain an order for the seizure of the property in the hands of the corporation as though no transfer had been made, and this upon the ground that the corporation, the new entity, is the same as the old and by taking the title to the property under such circumstances is the assumer in law of the debts of the one making the transfer."
In a dissenting opinion therein, Chief Justice O'Niell took the view that in all cases where there had been a fraudulent *439 transfer of property it is governed by Articles 1968 to 1994 of the Civil Code, and that if a creditor's right or cause of action does not conform to these articles of the Civil Code he does not have a cause of action. It will be observed that the majority viewpoint, which is representative of the jurisprudence of this state at the present time, recognized that the defendant creditor has a personal right of action.
Counsel for plaintiff assert that plaintiff has a cause of action as provided under LSA-R.S. 12:27 and also it is contended that Ray is personally liable for breach of his fiduciary relationship as a director of the debtor corporation. Having determined plaintiff, as to Ray, has a cause of action upon other grounds, we find it unnecessary to pass upon these contentions which do not impress us as being meritorious. Under the circumstances alleged in the petition, it does not appear that plaintiff has brought itself within the provisions of LSA-R.S. 12:27 by fixing liability for the corporate debts upon Ray as a director of that corporation. It is sufficient, we think, that the court has determined that plaintiff may assert its cause of action against Ray under clauses enumerated one and four, above.
The exception of no cause and no right of action filed on behalf of Andrew J. Gentry was properly sustained. Plaintiff's petition avers that Gentry was no more than an employee and was used by Ray as a mere figurehead. Under these circumstances we hold that he is not alleged to be personally liable for plaintiff's debt.
With respect to the exception of no cause of action filed by L. M. Ray Corporation and the pleas of prescription which were overruled by the trial court, we prefer not to pass upon these issues on this appeal, although we recognize the force of Succession of Markham, 180 La. 211, 156 So. 225 (1934), wherein it was held that the lower court's rulings on all exceptions were properly before the appellate court, even though the appellee did not answer the appeal as to particular exceptions decided adversely to appellee by the trial judge.
For the reasons hereinabove stated, the judgment of the trial court insofar as it sustained the exception of no cause of action filed on behalf of L. M. Ray, is annulled, reversed and set aside, and the exception of no cause of action filed by him is overruled. In all other respects the judgment from which the plaintiff has appealed is affirmed, taxation of costs of the appeal to be deferred until determination of the suit on its merits. The case is remanded for proceedings not inconsistent with the opinion herein.
NOTES
[1] (a) L. M. Ray Corporation; (b) L. M. Ray Construction Corporation; (c) Woodlawn Development Corporation (hereinafter referred to simply as "WOODLAWN"); (a) Acme Wellpoint Corporation; (e) Acme General Construction, Inc.; (f) Acme Realty, Inc.; (g) Acme Equipment & contracting, Inc.; (h) North Monroe Realty, Inc.; (i) Small Homes, Inc.; (j) Magnolia Builders & Supply, Inc.; (hereinafter referred to simply as "MAGNOLIA").