207 So.2d 882 (1968)
Eddie P. HEBERT and Dwight M. Walls
v.
Robert N. WIEGAND et al.
No. 2804.
Court of Appeal of Louisiana, Fourth Circuit.
March 4, 1968.
*883 Vial, Vial, Lemmon & Lemmon, Leon C. Vial, III, Hahnville, for plaintiffs-appellants.
Joel T. Chaisson and Joseph Accardo, Jr., Luling, for defendants-appellees.
Before CHASEZ, BARNETTE and JOHNSON, JJ.
BARNETTE, Judge.
The plaintiffs Eddie P. Hebert and Dwight M. Walls seek recovery of $1,800.00 with interest and attorney's fees from the defendants Robert N. Wiegand and Wiegand Corporation, in solido, under the terms of a contract to sell a certain lot in Luling Heights Subdivision in St. Charles Parish, on which contract defendant Wiegand Corporation defaulted.
Judgment was rendered in favor of plaintiffs against defendant Wiegand Corporation for $1,800.00 with interest and $200.00 attorney's fees. Plaintiffs' demands against the defendant Robert N. Wiegand were rejected and the suit dismissed as to him. From this judgment the plaintiffs have appealed seeking reversal of the judgment insofar as it rejects their demands against Robert N. Wiegand and also seeking an increase in the amount of attorney's fees.
The following written agreement forms the basis of this suit:

"AGREEMENT TO PURCHASE REAL ESTATE
"This agreement made and entered into this 25th day of June 1960, and between WIEGAND CORPORATION, hereinafter referred to as Vendor, and D. M. Walls, hereinafter referred to as Purchaser.
"The Purchaser hereby agrees to purchase and Vendor hereby agrees to sell, under the terms and conditions hereinafter set forth, the following described property, to-wit:
"Lot 160, Sq. D, Luling Heights Subdivision, Luling, Louisiana
"Measuring 60' × 120'.
"The purchase price of said property shall be for the sum of ONE THOUSAND TWO HUNDRED AND NO/100 ($1,200.00), which shall be paid as follows: $300.00 upon the signing of the agreement and $30.00 on the twenty-first of every month beginning with July 21st, 1960, until the Purchaser has paid into [sic] said Vendor the full purchase price. Said purchase price of $1,200.00 is to bear interest at the rate of SEVEN (7%) percent per annum, and the monthly payments thereof by said Purchaser to be calculated on a direct reduction loan basis.
"Purchaser herein is to be given occupancy of the premises on the signing of this agreement. Care and maintenance of said premises is to be assumed by the Purchaser herein.
"All liens and encumbrances existing against the property as of the date of this agreement shall be paid by the Vendor at the time of the passing of the Act of Sale. All proper and necessary certificates and revenue stamps to be paid by the Vendor. Real Estate Taxes are to be prorated as of the date of the Act of Sale. Cost of the survey to be paid by the purchaser.
"It is further understood and agreed by and between the parties hereto that should the Purchaser fail to make any payment due as hereinabove set forth, or fail to take title to the property when paid up and within 60 days thereafter, that said Purchaser shall forfeit all *884 amounts paid under this agreement to the Vendor herein, and that further, no part thereof shall be due or reimbursed to said Purchaser. Should the Vendor fail to perform under the terms of this agreement, the Purchaser shall have the right either to specific performance or to a return of double the amount paid by the Purchaser to the Vendor on account of said agreement.
"Either party who fails to perform under the terms of this agreement shall be obligated to pay reasonable attorney's fees for enforcement of any rights that may be exercised hereunder.
"Vendor shall deliver merchantable title to the Purchaser herein. Should the Vendor be unable to deliver such title within the time specified herein, he shall be subject to a penalty of double the amount paid by the Purchaser as hereinabove set forth.
"This agreement shall be mutually binding upon the heirs and assigns of the parties hereto.
"THUS DONE AND SIGNED by the parties hereto on the day and month and year first above written, in the presence of the undersigned competent witnesses.
[Signed] Robert N. Wiegand
 WIEGAND CORPORATION
[Signed] D. M. Walls
 D. M. Walls
WITNESSES:
________________
________________"
The agreement was not recorded in the Conveyance Records of St. Charles Parish.
Notwithstanding the foregoing agreement and the monthly payments made by Walls, Weigand Corporation, represented by Robert N. Weigand, sold the lot described, together with three other lots, to Eugene P. Morton on October 5, 1960. Walls was not notified of the sale and continued to make monthly payments to Robert N. Weigand, who in turn, without Walls' knowledge, remitted the payments to Morton. Walls made payments totalling $600, in addition to the $300 paid upon execution of the agreement, before he discovered the sale of the lot to Morton and Wiegand's inability to deliver title to him.
Walls had previously purchased from Mr. Wiegand the House and lots 158 and 159 adjoining lot 160 and wanted to acquire lot 160 to improve his property and to use as a "playground." In May of 1962 he agreed to sell his house and the three lots to Eddie P. Hebert, and requested his attorney to obtain a statement from Mr. Wiegand of the balance due on lot 160 and to prepare the deed. Pursuant thereto, Walls' attorney wrote to Robert N. Wiegand on May 9, 1962 as follows:
"Mr. D. M. Walls has an agreement to purchase real estate from you dated June 25, 1960, concerning Lot 160, Square D, Luling Heights Subdivision. Please advise me what the balance is since he wants to pay it out and have it transfered [sic] to a third party. That can be worked directly from Wiegand Corporation to the vendee."
The following reply was given by letter dated May 11, 1962:
"With regard to your letter dated May 9th the balance on the above captioned lot is $328.72 as of April 26, 1962."
A previous letter dated February 5, 1962 had been written to Walls showing the total *885 amount paid giving the balance due on the contract as of December 31, 1961. It concludes with the following statement:
"Remember that any money paid in over and above your monthly payment is applied directly to the unpaid balance. Extra payments as these will enable you to take title more quickly."
This letter is signed Robert N. Wiegand, Realtor [by] William G. Wiegand, Jr. who was identified by testimony given at trial as a relative and employee of Mr. Wiegand.
We think it is significant that neither of these letters disclosed that Wiegand had sold the lot in question. The letter of February 5 was obviously intended to induce Walls to pay up in advance and take title at an earlier date, notwithstanding Wiegand's inability to deliver title.
Upon completion of preparations to effect the transfer of the property from Walls to Hebert pursuant to their agreement, it was discovered that lot 160 had been sold by Wiegand to Morton. Walls and Hebert were informed of this fact when they went to attorney's office to sign the deed of conveyance on May 19, 1962. Notwithstanding this information, the deed was executed and Hebert paid the agreed price, including $1,200.00 representing the consideration for transfer of lot 160. His explanation for the payment of this sum, knowing that the lot could not be delivered, was that he held to the hope that Mr. Walls' attorney would ultimately be successful in his negotiations with Wiegand and Morton to effect a transfer of the lot. The attorney withheld $328.72 of the purchase price to pay the balance due Wiegand. This amount was kept in a special account and offer of tender to Wiegand was made during the trial below.
Morton, who had been in the air conditioning business, was in serious financial difficulty in September, 1960. Wiegand was indebted to Morton in an amount exceeding $6,000.00 and was himself in financial difficulty, and was being pressed by Morton for payment. It was agreed between them that Wiegand would convey to Morton Lots 160, 161, 163 and 165 of Square D in Luling Heights Subdivision and accordingly a cash deed was executed by Wiegand Corporation to Morton on October 5, 1960, reciting consideration of $6,000.00. No counter letter or other instrument was executed to qualify or reflect any agreement between the parties that this was not an outright conveyance. There was, however, some testimony that Morton would use the lots in an attempt to raise money and that he did attempt to mortgage or sell them. Later lot 161 was transferred to Banner Corporation, another Wiegand Company, but lot 160 along with other property was ultimately lost by Morton who went into bankruptcy. Lot 160 along with other property was transferred to Republic Transcon Industries, one of Morton's creditors.
Morton denied any knowledge of Wiegand's contract to sell lot 160 to Walls and denied that any agreement existed between him and Wiegand that he, Morton, would transfer the lot to Walls or his assignee upon Walls' payment of the balance of the purchase price.
Wiegand's explanation of the matter is in substance that he personally and Wiegand Corporation were in financial difficulty and that he was fearful that a creditor might seize lot 160 which Wiegand Corporation had contracted to sell to Walls; that he was anxious to protect Walls and attempted to do so by the transfer to Morton, with whom, he testified, he had an agreement for transfer of the lot to Walls upon the payment of the balance due. As evidence of some agreement with Morton, Wiegand filed in evidence eight cancelled checks payable to Morton totalling $335.00. On the check for $150.00 dated October 1, 1961, in the left hand bottom corner is the notation "Lot 160 Sq. D." On a $30.00 check dated March 12, 1961, appears the notation "March payment." On a $25.00 check dated March 28, 1962 is the notation *886 "Walls March Pmt Less $5.00 Eviction Fee for Peters."
On cross-examination of Morton relative to the significance of the notations on the checks, he said they meant nothing to him and said "* * * I was getting something from somebody who owed me money." While the testimony of Morton is more believable, as far as Walls is concerned it is of no consequence whether or not Morton had some agreement with Wiegand for transfer of the lot to Walls at some future date.
We think Mr. Wiegand was fully aware of his (or his corporation's) obligation to Walls and that he probably entertained the hope that he could, when the time came, in some manner obtain a transfer of lot 160 to Walls or his assignee. We think it is true also that he and his corporation were in financial difficulty and that he was seeking some means of satisfying his creditor Morton. We cannot understand, nor does he give a satisfactory explanation why, if he really was fearful of a seizure of lot 160, and his desire was to protect Walls, he did not convey the lot then to Walls and assign the balance of payments to Morton if he desired Morton to receive them. He could simply have recorded the contract to protect Walls against a third party or inform Walls of his difficulty so he, Walls, could take steps to protect his interest in the lot by recording the contract or by any other means available to him. Wiegand's testimony that he tried to get Walls to pay the balance and take title was denied by Walls. Apparently, according to his reason for judgment, the trial judge accepted Wiegand's testimony that he had informed Walls of his difficulties and had suggested that he pay the balance and take title.
It is our opinion that Walls was not offered an opportunity to accelerate his payments, and take title except by the inference of the letter of February 5, 1962, and that had he been advised of the necessity for doing so, he would have made an attempt to do so, especially if he had known of the danger of losing all that he had invested in the lot. Whether we accept the testimony of Wiegand or Walls on this point, is however, of no material significance, since Walls was under no obligation to accelerate payments and the breach of the contract by Wiegand Corporation is conclusively shown.
During the course of trial below an exception of no cause or right of action was made orally against the plaintiff Eddie P. Hebert and referred to the merits. There is no mention of this in the reasons for judgment or in the judgment which is in favor of both Hebert and Walls against Wiegand Corporation. We must therefore treat the exception as having been overruled. This was error. Clearly there was no privity of contract between Hebert and Wiegand Corporation nor any other basis upon which we can find a cause or a right of action of Hebert against Wiegand Corporation or Wiegand individually. Whatever right, if any, Hebert might have for the loss sustained by him, is against the co-plaintiff Walls.
There can be no doubt of the correctness of the judgment in Walls' favor against Wiegand Corporation, nor is any attack made on that part of the judgment by either of the parties on appeal. The only issue before us is the question of liability of Robert N. Wiegand, and the sufficiency of the attorney's fees.
The plaintiffs seek recovery against Wiegand individually on the basis of fraud. The trial judge was impressed with the candor of Mr. Wiegand and believed his statement relative to the reasons for transferring the lot in question to Morton, from which he concluded that Wiegand had no intention of defrauding Walls. We are convinced however, even absent any fraudulent intent, the judgment dismissing Walls' suit against Wiegand individually was in error.
Wiegand Corporation was chartered in 1958 with Robert N. Wiegand, Robert *887 Wiegand (Robert N.'s father) and Olivia Eustis Eaves (Mrs. Robert N. Wiegand) as the sole incorporators. One hundred shares of stock of $10.00 par value were subscribed; 98 by Robert N. Wiegand and one each by his father and wife. They were named in the act of incorporation as directors. Nowhere in the record do we find any identification of the officers of the corporation, except the testimony of Robert N. Wiegand and the purported resolution by which the sale to Morton was authorized, wherein merely the "President" without identifying him, was authorized to make the sale. This resolution is signed "Robert Wiegand" over the word "Secretary." Neither the contract with Walls nor the deed to Morton state the capacity in which Robert N. Wiegand signed for the corporation. Even in his testimony he was confused whether his wife was Treasurer or Vice-president, and corrected this by saying he was president, his wife, vice president and his father, secretary-treasurer.
No corporation records were kept; there were no by-laws; there were no regular meetings of the board of directors or the stockholders and hence, no resolutions or minutes, except as necessary to approve some action decided upon by Robert N. Wiegand, such as the resolution authorizing the sale to Morton. As to this purported resolution, we have no doubt that it was prepared by or under the direction of Robert N. Wiegand and presented to his father for signature without an actual meeting. This conclusion is based in part upon the testimony of Mr. Wiegand that he made all the decisions and formalities were dispensed with after the corporation got into financial difficulty. Mr. Wiegand testified:
"I mean the roof caved in and I found out I was in debt, the years around 1959 or 1960, along in there. Since then the corporation's been totally inactive, defunct and it's done nothing but sit there and hold its desk. It was not forced into bankruptcy and we let it stay where it is although it could go under there at any moment."
It was during this period (1960) when in the words of Mr. Wiegand the corporation was "inactive" and "defunct" that the contract with Walls and the subsequent sale of the lot to Morton were made.
There was no separate bank account in the name of the corporation except for a brief period following the initial deposit of $1,000.00 when the corporation was formed. It is significant that the payments made by Walls on his contract and remitted to Morton, were commingled with general funds of Robert N. Wiegand. The checks given to Morton were drawn on the account of "ROBERT N. WIEGAND, REALTOR Management Account."
From the foregoing facts we are convinced beyond any doubt that the corporation was merely the alter ego of Robert N. Wiegand. Every act purporting to have been done by or in the name of the corporation was entirely dictated and controlled by, and was in fact the act of, Robert N. Wiegand personally. Thus he cannot find refuge behind the corporate shield to escape his personal liability to Walls. Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); Shreveport Sash & Door Company v. Ray, 159 So.2d 434 (La.App. 2d Cir. 1963); Brown v. Benton Creosoting Co., 147 So. 2d 89 (La.App. 2d Cir. 1962); Jackson v. Kirschman, 173 So. 562 (La.App.Orleans, 1937); Lindstrom v. Sauer, 166 So. 636 (La.App.Orleans, 1936); Mayo v. Pioneer Bank & Trust Company, 274 F.2d 320 (5 Cir. 1960), and authorities cited therein.
The principle is stated in 19 C.J.S. Verbo Corporations § 839 in the following language:
"Director or officer as alter ego of corporation. Where the director or officer is the alter ego of the corporation, that is, where there is such unity of interest and ownership that the separateness of the individual and corporation has ceased *888 to exist, and the facts are such that an adherence to the fiction of separate existence of the corporation would sanction a fraud or promote injustice, such director or officer will be held liable for obligations of the corporation. * * *"
The facts in the case of Brown v. Benton Creosoting Company, supra, are so similar to those in this case that we quote therefrom as follows:
* * * * * *
"The corporation, however, virtually ceased from its inception, to operate as a corporationno meetings of the shareholders or directors were held after the organizational proceedings were had. No bank account was maintained by the corporation, but all receipts, whether by check or cash, were remitted to and deposited in the account of Kennedy Sawmills, Inc.
* * * * * *
"The funds of the corporation and Kennedy Sawmills, Inc., were completely commingled.
* * * * * *
"None of the purported owners or stockholders in the corporation was ever consulted about the operation of the business."
In that case the court found that these factual considerations compelled a decision to pierce the corporate veil, and we are of the opinion that the same should be done in the case before us.
The contract specifically provides for penalty in the event of breach by either party. The penalty against the vendor in lieu of specific performance is payment of double the amount paid on the contract by the purchaser. Walls had paid $900 and is therefore entitled to judgment in the amount of $1,800.00. The contract also provides for reasonable attorney's fees for enforcement.
The allowance of $200 by the trial court for attorney's fees is in our opinion inadequate, considering the total amount of the judgment, the length of the record, trial below lasting one full day, and the appeal to this court. We therefore fix the attorney's fees at $400 which, in the exercise of our discretion, we find to be reasonable.
For the foregoing reasons the exception of no cause and of no right of action against the petition of the plaintiff Eddie P. Hebert is sustained and accordingly the judgment in his favor against Wiegand Corporation is annulled and set aside and the suit dismissed as to the demands of Eddie P. Hebert.
The judgment in favor of Dwight M. Walls against Wiegand Corporation is amended so as to increase the allowance for attorney's fees from $200 to $400 and as amended, is affirmed in solido with the judgment against Robert N. Wiegand, individually.
The judgment rejecting the demands of Dwight M. Walls and dismissing his suit against Robert N. Wiegand, individually, is reversed and judgment is now rendered in his favor against Robert N. Wiegand, individually in the full sum of $1,800.00 plus $400 additional for attorney's fees, with legal interest thereon from judicial demand, in solido with the judgment against Wiegand Corporation.
All costs in both courts are assessed against Robert N. Wiegand and Wiegand Corporation, in solido.
Annulled in part; amended and affirmed in part; reversed in part and judgment rendered.