227 So.2d 265 (1969)
TEXAS INDUSTRIES, INC., d. b. a. Louisiana Industries; American Title Insurance Company, Third-Party Plaintiff-Appellee,
v.
DUPUY & DUPUY DEVELOPERS, INC. et al., A. J. Dupuy, Sr., Third-Party Defendant-Appellant.
No. 11218.
Court of Appeal of Louisiana, Second Circuit.
September 22, 1969.
*267 James B. Wells, Bossier City, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for The National Bank of Bossier City, administrator of the estate of A. J. Dupuy, Sr., third-party defendant-appellant; H. F. Sockrider, Jr., Shreveport, of counsel.
Peters, Ward, Johnson & Phillips, Shreveport, for American Title Ins. Co., third-party plaintiff-appellee; Hugh T. Ward, Shreveport, of counsel.
Before AYRES, BOLIN, and DIXON, JJ.
AYRES, Judge.
The personal liability vel non of A. J. Dupuy, Sr., stockholder and officer of Dupuy & Dupuy Developers, Inc., for a corporate debt is the question presented by this appeal. The contention as to Dupuy's personal liability is predicated on the propositions that (1) the corporation was the alter ego of A. J. Dupuy, Sr., and (2) A. J. Dupuy, Sr., is chargeable with an act of fraud allegedly perpetrated through the execution by A. J. Dupuy, Jr., also a stockholder and officer of Dupuy & Dupuy Developers, Inc., of an alleged false and fraudulent affidavit as to the nonexistence of labor and material claims or liens on a described lot upon which the corporation, as contractor, had constructed a residence.
The facts out of which this action arose will be first briefly reviewed. Plaintiff Texas Industries, Inc., sold and delivered unto Dupuy & Dupuy Developers, Inc., materials for use in the construction of the residence. The lot was then owned by defendant corporation. After completion of the residence, the corporation sold the lot and the improvements to Carey Newton Taylor. To make payment of the purchase price, Taylor obtained a loan from Oden Investment Corporation, secured by a mortgage upon the property, title to which was insured by the American Title Insurance Company. Sale of the property to Taylor, the securing of a loan by him, and the insuring of the title to the property were consummated by reason and on a basis there were no unpaid claims against the property as the affidavit of A. J. Dupuy, Jr., stated.
Made a defendant in addition to Dupuy & Dupuy Developers, Inc., was Carey Newton Taylor. Plaintiff sought judgment against both defendants in solido for the amount of its claim and recognition of its materialmen's lien and privilege on the property. Taylor, in a third-party proceeding, caused the American Title Insurance Company to be made a third-party defendant against whom he sought judgment for any amount for which he might be condemned or for which a lien might be recognized on his property. The American Title Insurance Company, in a similar proceeding, caused Dupuy & Dupuy Developers, Inc., A. J. Dupuy, Sr., and A. J. Dupuy, Jr., to be made third-party defendants against whom it sought judgment in solido for any amount for which it might be condemned or for which it might be liable if *268 a lien was recognized on the property insured by it.
After trial, plaintiff was awarded judgment against the defendant contractor, Dupuy & Dupuy Developers, Inc., for the sum of $1,223.09 with interest thereon at the legal rate of 5% per annum from October 10, 1966, until paid, with recognition of its lien and privilege on the property as a furnisher of materials. There was further judgment in favor of third-party plaintiff, American Title Insurance Company, against third-party defendants, Dupuy & Dupuy Developers, Inc., A. J. Dupuy, Sr., and A. J. Dupuy, Jr., in solido for the identical amount awarded plaintiff against defendant Dupuy & Dupuy Developers, Inc.
From the judgment only A. J. Dupuy, Sr., appealed. After the record of appeal was lodged in this court, Dupuy, Sr., died, whereupon The National Bank of Bossier City, administrator of his estate, was substituted as third-party defendant.
For many years A. J. Dupuy, Sr., individually engaged as a broker in the real estate business. For a lesser number of years, A. J. Dupuy, Jr., individually engaged in the construction business, which business was restricted primarily to residential construction. This construction business was chartered as a corporation February 19, 1965, with the Dupuys, Senior and Junior, and a local attorney as its incorporators. They constituted its stockholders and officers. The principal offices were held by the Dupuys. Dupuy, Sr., advanced the capital of $1,000.00 as provided by the corporation's charter. Originally, 98 of the 100 shares of the capital stock were issued in his name. A share each was allotted to Dupuy, Jr., and the attorney. Soon thereafter, probably in June, 1965, 60 shares of the capital stock were transferred to A. J. Dupuy, Jr.
A. J. Dupuy, Sr., neither assumed authority nor exercised any control over the corporation, its business or activities except on one occasion when he was instrumental in closing a sale and a loan on behalf of the corporation. Dupuy, Jr., was in control and managed the corporate business and affairs in the same manner and to the same extent as he had exercised control and management over his own individual business prior to its incorporation. On occasions when the corporation was in need of funds, Dupuy, Sr., would endorse its notes at a local bank or personally advance the needed cash. This was a continuation of the assistance provided his son before the latter's business was incorporated.
Among principles statutory in origin and well recognized in the jurisprudence of this State is the rule that corporations are individual beings, separate and distinct from the individuals who compose their membership. LSA-C.C. Art. 435. The estates and rights of corporations belong exclusively to them. LSA-C.C. Art. 436. Therefore, the debts and obligations due to a corporation are not due to the individuals who compose its membership. Hence, a creditor of a corporation cannot compel the corporate members or stockholders to individually pay that which is due by the corporation. LSA-C.C. Art. 437; LSA-R.S. formerly 12:19(A), now 12.93(B).
A general exception to the rule of nonliability of shareholders and officers for corporate obligations is recognized where the shareholder or officer has practiced fraud upon a person through the corporation or upon the corporation itself. LSA-R.S. 12:95.
Other exceptions to these rules of nonliability of a shareholder for corporate debts have been recognized where the stockholder is the alter ego of the corporation. For the doctrine of an alter ego to apply, it must be shown that the stockholder whose individual and personal liability for a corporate debt is sought disregarded the entity of the corporation and, thus, made the corporation a mere agency for the transaction of his own private business. Thus, the separate individualities of the corporation and its stockholders must have *269 ceased to exist. Brown v. Benton Creosoting Co., Inc., 147 So.2d 89 (La.App., 2d Cir. 1962cert. denied).
The doctrine of alter ego does not create assets in a corporation but it simply fastens liability on an individual who uses the corporation merely as an instrumentality in conducting his own personal business. Liability in such instances springs from fraud perpetrated not necessarily on the corporation itself but upon third persons dealing with the corporation. Shreveport Sash & Door Company v. Ray, 159 So.2d 434, 437 (La.App., 2d Cir. 1963). Though the exception to the principle of nonliability of a stockholder is applicable when an individual stockholder in a corporation has utilized the corporate identity as a screen or cover-up of his individual acts of fraud or deception practiced upon the public or the creditors of a corporation, the record in the instant case is barren of proof that A. J. Dupuy, Sr., used the corporation for the advancement of his personal affairs, that he exercised any control over its affairs or operations, or that he received the smallest benefit therefrom. No evidence has been produced warranting a finding of fraud, deception, or ill practice on the part of A. J. Dupuy, Sr.
Nor can the liability of A. J. Dupuy, Sr., for corporate debts be predicated upon the corporation's limited capitalization. The amount of paid-in capital was in accordance with statutory authorization. The articles of incorporation are matters of public record. All persons contemplating business transactions with the corporation have ready access to the information disclosed by the public records. Included in the information disclosed is the paid-in capital of the corporation. There is no presumption of fraud, deceit, or ill practices on the part of a stockholder because of a corporation's limited capitalization. Inadequate capitalization is not of itself a badge of fraud. A subscription of an incorporator of a corporation limits his liability and such limitation is legitimate. The general rule is that an individual may incorporate his business for the sole purpose of escaping individual liability for the corporate debts. As pointed out in L. L. Ridgway Company v. Marks, 146 So.2d 61, 63 (La.App., 4th Cir. 1962), limitation of liability is often a primary reason for incorporating; escape of individual liability may be its sole purpose.
The fact that one owns a majority of stock in a corporation does not of itself make him liable for the corporate debts. So long as the corporate existence is maintained, immunity from liability of even a sole stockholder is the same as if there are many stockholders. Buckeye Cotton Oil Co. v. Amrhein, 168 La. 139, 121 So. 602 (1929); Johnson v. Kinchen, 160 So.2d 296 (La.App., 1st Cir. 1964); 18 C. J.S. Corporations §§ 580, 581, pp. 1306-1308. Except under circumstances whereby a shareholder becomes individually liable for corporate debts through fraud, deceit, or ill practices, the shareholder is within his rights to limit his obligation by the amount of and to the extent of his subscription for capital stock. He may properly say, "Thus far I will go but no furtherI will risk the amount paid for my stock, but no more."
The several cases cited and relied upon by plaintiff-appellee, such as Keller v. Haas, 202 La. 486, 12 So.2d 238 (1943); Giuffria Realty Company v. Kathman-Landry, Inc., 173 So.2d 329 (La.App., 4th Cir. 1965); Brown v. Benton Creosoting Co., Inc., supra; Lindstrom v. Sauer, 166 So. 636 (La. App., Orls. 1936), are clearly distinguishable upon their facts from the instant case. The situation of an alter ego does not exist; nor is there proof, as heretofore pointed out, of fraud, deceit, or ill practices on the part of A. J. Dupuy, Sr.
Lastly, A. J. Dupuy, Sr., is sought to be held personally liable to third-party plaintiff for the corporate debt of Dupuy & Dupuy Developers, Inc., through an affidavit by A. J. Dupuy, Jr., heretofore referred to. This affidavit, ex parte so far *270 as Dupuy, Sr., is concerned, is not binding upon him. He had no knowledge or information as to its execution; nor did he ratify or receive any benefit therefrom.
For the reasons assigned, the judgment appealed, so far as it condemned A. J. Dupuy, Sr., is annulled, avoided, reversed, and set aside; and
It is now ordered, adjudged, and decreed that the demands of the third-party plaintiff, American Title Insurance Company, against the third-party defendant, A. J. Dupuy, Sr., of whose estate The National Bank of Bossier City is administrator, and which has been substituted as proper party litigant, be, and the same are hereby, rejected and dismissed at the cost of the third-party plaintiff.
Reversed and rendered.