246 So.2d 872 (1971)
The NATIONAL BANK OF COMMERCE IN NEW ORLEANS, Fidelity and Deposit Company of Maryland, Liberty Mutual Insurance Company and United States Fidelity and Guaranty Company
v.
HUGHES-WALSH CO., Inc. and Clifford E. Hughes.
No. 4375.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1971.
*873 John V. Baus and Raymond J. Salassi, Jr., of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for the National Bank of Commerce in New Orleans, Fidelity and Deposit Co. of Maryland, Liberty Mutual Ins. Co., and U. S. Fidelity and Guaranty Co., plaintiffs-appellees.
Hughes-Walsh Co., Inc., Clifford E. Hughes, in pro. per., defendants-appellants.
Before CHASEZ, GULOTTA, and BOUTALL, JJ.
CHASEZ, Judge.
This suit was brought by plaintiffs-appellees, National Bank of Commerce (N.B.C.) and three subrogated insurers, Fidelity and Deposit Company of Maryland, Liberty Mutual Insurance Company, and United States Fidelity and Guaranty Company, against defendants-appellants, Hughes-Walsh Company, Inc., and its president, Clifford E. Hughes, for losses incurred through a system commonly referred to as "check kiting."
The Civil District Court for the Parish of Orleans entered a judgment in favor of all plaintiffs against both defendants in solido in the amount of $87,218.96, with legal interest from demand and for all costs from which judgment defendants entered this appeal.
From about August 1967 to September 20, 1968, Hughes-Walsh Company, Inc., an electrical contractor operating in Texas and Louisiana, had a checking account with N.B.C. in New Orleans. The account was opened by Clifford E. Hughes, the president of the corporation and owner of approximately 95% of the capital stock. A resolution of the Board of that corporation was duly filed with the bank indicating that only one signature was required on any check drawn on that account.
Hughes-Walsh Company, Inc. also had an account with the South Oak Cliff State Bank of Dallas, Texas (Texas Bank) of which bank Mr. Hughes was a director.
Plaintiffs, Fidelity and Deposit Company of Maryland, Liberty Mutual Insurance Company, and United States Fidelity and Guaranty Company are three of six cosureties of N.B.C. under the terms of a Bankers' Blanket Bond issued to N.B.C. on May 25, 1967. Under the terms of the bond, these co-sureties insured N.B.C. for certain losses suffered by N.B.C. Each surety guaranteed a percentage of the loss incurred.
On the 10th of September, 1968 the Hughes-Walsh Company, Inc. account of the Texas Bank showed an overdraft in the amount of $55,538.05 and on the same day Mr. Hughes signed a check drawn on *874 the Hughes-Walsh Company, Inc. account in the N.B.C., payable to the order of and deposited in the Texas Bank to the credit of the Hughes-Walsh Company, Inc. account in that bank. The check was in the amount of $87,500.00, thus covering the overdraft in the Texas Bank. At the time of the drawing and depositing of the check for $87,500.00 drawn on the N.B.C. account that account had a balance of only $611.00. On the same day, September 10, 1968, Mr. Hughes, together with another official of Hughes-Walsh Company, Inc. signed a check for $87,450.00 drawn on the Hughes-Walsh account in the Texas bank and mailed it, apparently on September 11, 1968, to N.B.C. for deposit to the credit of the account of Hughes-Walsh Company, Inc. Credit for the amount was accordingly given to that account on the 12th of September, 1968, the day on which the check was received by N.B.C.
The check for $87,500.00 deposited in the Texas Bank was honored by the N.B.C. when it was presented, through the usual banking systems, and prior to the N.B.C. having received notice that the check for $87,450.00 drawn on the Texas Bank (which had been credited by N.B.C. to the Hughes-Walsh account) was dishonored by the Texas Bank for the reason that there was not sufficient funds on deposit in that bank to cover the $87,450.00 check drawn on it.
The transaction above described is one which has come to be commonly known as "check kiting." The purpose of this device is to secure credit or use of funds which do not belong to the drawer of the check, but are funds which are owned by the bank or banks on which the checks are drawn. If the device is used merely to gain time and funds are eventually deposited, then no loss has been suffered and the scheme is never disclosed. If, however, funds are not forthcoming to enable the drawer of the checks to have on deposit sufficient funds with which to cover the checks when they reach their ultimate destination, then the scheme is divulged and one or more banks has suffered a loss as the result of the "check kiting" scheme.
Although Hughes admitted perpetrating the scheme and admitting owing the money to the N.B.C., it is contended by both defendants that there was no fraud committed because when the check was drawn on the Texas Bank the defendants presumed that the check would be honored as an overdraft by the Texas Bank because that bank had previously honored overdrafts created in the Hughes-Walsh account. We may rhetorically ask if, as defendants contend, it was presumed that the Texas Bank would cover an overdraft by making a loan to Mr. Hughes and/or his corporation as it did in the past, and there was an overdraft already existing of some $55,538.05, why did he not make a loan to cover the overdraft rather than depositing a check on the N.B.C. when he had full knowledge of the fact that he had no funds in that bank to cover the check? For emphasis, we reiterate the only explanation offered for the activities performed was the hope that accounts receivable would be received in time to cover the checks or the anticipation that the Texas Bank would cover any overdraft resulting from the situation.
This court is of the opinion that this scheme entailed the use of fraudulent transactions by Mr. Hughes in an effort to use money of the bank which did not belong to him, and which money benefited the corporation of which he was the owner of 95% of the stock, hence was of direct benefit to Mr. Hughes. The fact that he hoped or expected to restore the money which he knew did not belong to him does not, in the Court's opinion, relieve him of his obligation nor furnish excuse for his deliberate intent to obtain funds which were not hiseven though for only a short period of time.
"Fraud", as defined by Webster's Seventh New Collegiate Dictionary is: "Deceit, trickery, intentional perversion of truth in order to induce another to part with something *875 of value or to surrender a legal right."
LSA-C.C. article 1848 provides:
"Fraud, like every other allegation, must be proved by him who alleges it, but it may be proved by simple presumption or by legal presumptions, as well as by other evidence. The maxim that fraud is not to be presumed, means no more than that it is not to be imputed without legal evidence."
We find plaintiffs have sufficiently carried their burden of proof. This matter is not a criminal prosecution for fraud and therefore the burden of proof is not "proof beyond a reasonable doubt", but is only proof by a preponderance of evidence. This plaintiffs have amply done. In actual fact, the documents and records of the transaction without the testimony of Hughes clearly illustrate that an unfair and dishonest advantage was gained by the perpetrator of the scheme. The facts show all too clearly that a successful attempt was made to obtain money which did not belong to defendants.
By way of emphasis, we would point to the fact that Mr. Gerald Clark, an officer of the Texas Bank, testified that there was no automatic agreement to cover overdrafts of Mr. Hughes or his Corporation even though they had covered overdrafts in the past. His testimony established that any overdraft in as large an amount as the one before the Court would have had to have been approved by him prior to the creation of the large overdraft. The Texas Bank would have honored it only after receiving assurance that funds were in transit to cover the overdraft.
As stated above, this court is of the opinion that the advantage gained by this fraudulent scheme resulted in benefit and advantage to the corporation of which Mr. Hughes was the owner of 95% of the stock, hence he was the ultimate beneficiary. He knowingly committed the acts which constitute fraud and we find that he is personally liable for the amount due.
LSA-R.S. 12:95 provides:
"Nothin in this Chapter shall be construed as in derogation of any rights which any person may by law have against a promoter, subscriber, shareholder, director or officer, or the corporation, because of any fraud practiced upon him by any such persons or the corporation, or in derogation of any right which the corporation may have because of any fraud practiced upon it by any of these persons."
And in the case of Shreveport Sash & Door Company v. Ray, La.App., 159 So.2d 434, at 437 (2nd Cir. 1963), the Court stated:
"Thus, it was said in Keller et al. v. Haas, et al., 202 La. 486, 12 So.2d 238 (1943):
`It is well settled that where an individual forms a corporation of which he is the sole and only stockholder or owns such control of the stock that the act of the corporation is his own, then he may not use the screen of corporate entity to absolve himself from responsibility.'" (Emphasis added.)
The court further stated in the same case:
"By reason of statutory limitations upon personal liability the directors and officers of a corporation do not purport to bind themselves individually as they do not incur personal liability for debts of the corporation. The Courts have made an exception to this rule in cases of fraud, malfeasance and criminal wrongdoings. Ridgway Company v. Marks, La.App., 146 So.2d 61 (4th Circuit 1962). The application of the exception arises when an individual owning a majority of the stock in the corporation has utilized the corporate entity as a screen for the purpose of individually practicing fraud or deception upon the *876 public or the creditors of the corporation. National Surety Corporation v. Pope, La.App., 147 So.2d 239 (4th Circuit 1962)." (Emphasis added)
In the recent case of Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., La.App., 227 So.2d 265 (2nd Cir. 1969), the Court stated:
"A general exception to the rule of nonliability of shareholders and officers for corporate obligations is recognized where the shareholder or officer has practiced fraud upon a person through the corporation or upon the corporation itself."
We conclude that the trial court was correct in determining that Mr. Hughes and Hughes-Walsh Company, Inc. were solidarily liable to plaintiffs and the judgment will be affirmed.
On motion to this court prior to the date of oral argument, counsel for defendants requested leave to withdraw from the case grounded on the fact that he was unable to communicate with Mr. Hughes who resided in Houston. His motion was granted. On oral argument Mr. Hughes appeared in proper person. Because no brief had been filed, Mr. Hughes was not allowed to argue on his own behalf. (Rule IX (11) Uniform Rules Courts of Appeal.)
However, after argument of the case by counsel for plaintiff, Mr. Hughes was given the opportunity to file a brief in the nature of a rebuttal memorandum to plaintiff's brief and oral argument. This offer was declined by Mr. Hughes.
Judgment in favor of plaintiff, The National Bank of Commerce in New Orleans, against defendants, Hughes-Walsh Company, Inc., and Clifford E. Hughes, jointly, severally and in solido in the sum of Forty-Six Thousand One Hundred Nine and 47/100 ($46,109.47) Dollars, together with legal interest thereon from September 26, 1968, and for all costs of these proceedings is affirmed.
Judgment in favor of plaintiff, Fidelity and Deposit Company of Maryland, and against defendants, Hughes-Walsh Company, Inc. and Clifford E. Hughes, jointly, severally, and in solido, in the sum of Seventeen Thousand Six Hundred Eighteen and 35/100 ($17,618.35) Dollars, with legal interest thereon from September 26, 1968, is affirmed.
Judgment in favor of plaintiff, Liberty Mutual Insurance Company, and against defendants, Hughes-Walsh Company, Inc. and Clifford E. Hughes, jointly, severally, and in solido in the sum of Eleven Thousand Seven Hundred Forty-Five and 57/100 ($11,745.57) Dollars, with legal interest thereon from September 26, 1968, is affirmed.
Judgment in favor of plaintiff, United States Fidelity and Guaranty Company, and against defendants, Hughes-Walsh Company and Clifford E. Hughes, jointly, severally, and in solido, in the sum of Eleven Thousand Seven Hundred Forty-Five and 57/100 ($11,745.57) Dollars, with legal interest thereon from September 26, 1968, is affirmed.
Affirmed.