346 So.2d 803 (1977)
Joseph MATASSA, Jr., etc.
v.
Simple TEMPLE et al.
No. 11267.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*804 Talbot, Sotile & Carmouche, Jess J. Waguespack, Napoleonville, for plaintiff-appellee.
Porteous, Toledano, Hainkel & Johnson, Larry P. Boudreaux, Thibodaux, for defendant-appellant Laurie Aucoin.
David S. Bell, Baton Rouge, for defendant-appellee Rogers Olivier.
Before SARTAIN, COVINGTON and LOTTINGER, JJ.
COVINGTON, Judge.
This suit originated as an action to enforce a materialman's privilege brought by Joseph Matassa, Jr., owner and operator of Sears Authorized Catalog Sales Merchant No. 17415, against Simple Temple, Inc., a domestic corporation, and Laurie Aucoin. The plaintiff alleged that the defendants owed the sum of $3,417.40, plus interest, and an additional sum of $25.00 representing the cost of recording the materialman's privilege, for certain materials, consisting of carpets, a cook top, an oven with hood, and a central heating and air conditioning unit. The materials were allegedly used in constructing improvements by the corporate contractor on Aucoin's land in Belle River Sites Subdivision, Pierre Part, Assumption Parish, Louisiana. There was no recorded building contract between the contractor and owner, nor was any bond recorded. The plaintiff timely recorded his privilege and then brought his action to enforce it. Subsequently, Aucoin filed a third-party demand against the corporation and its officers-shareholders, Rogers Olivier, Harry E. Breaux, Henry S. Breaux and Charles Mabile for indemnity, alleging fraud and breach of contract. Simple Temple, Inc. was to construct a home for Aucoin for $22,000.00 and he had paid $18,500.00 to the builder as of November 16, 1973. Soon thereafter, it became apparent that the builder had not paid all of its suppliers; materialman's privileges amounting to $11,060.46, including that of the plaintiff herein, were filed against Aucoin's property. Several suits, including the plaintiff's, followed.
After trial, the trial court rendered judgment as follows: in favor of the plaintiff and against the corporation and Aucoin in the amount of $3,417.40, recognizing and enforcing the plaintiff's materialman's privilege; granting Aucoin judgment over against Simple Temple, Inc. for all sums which Aucoin has to pay as a result of the judgment on the principal demand; denying Aucoin's claim against the other third-party defendants. Aucoin has devolutively appealed the judgment, limiting his appeal to the denial of his third-party demand.
On appeal, the third-party plaintiff, Laurie Aucoin, primarily assigns as error the failure of the trial court to find that the officers of Simple Temple, Inc. acted fraudulently and that the corporation was the alter ego of its officers-shareholders, thus not allowing Aucoin to pierce the corporate veil.
*805 The evidence does not establish fraud. The trial judge at the conclusion of the case informed the appellant's counsel that fraud had not been proven. In his closing remarks to the court counsel conceded this fact. The record fully reflects that the third-party defendants formed a corporation, had the articles of incorporation and the initial report duly filed with the Secretary of State, and received a charter in the name of Simple Temple, Inc. The record does not reflect any illegal, immoral or unethical conduct on the part of the third-party defendants. In fact, the evidence shows that none of the third-party defendants made any money on the particular construction job involved in the instant case, or on any of the other two or three jobs which they undertook. Moreover, in the instant case, Aucoin admitted that he paid no more by having to pay Matassa (Sears) than if he had paid Simple Temple, Inc. in full:
"Q. Now, when construction work stopped, when you stopped payment under the contract on the fifth payment of $2,000.00 which was next due, what happened after that? You got someone else to continue the completion of the house? I take it the house is now completed.
A. Yeah, it is completed.
Q. Now, who completed it?
A. Harry and Henry Braud done the work. And I bought the materials with the rest of the money.
* * * * * *
Q. Now, did you pay Harry and Henry Braud for the work?
A. No. They done it on their own.
* * * * * *
Q. You paid for the materials?
A. Right.
Q. So, you didn't pay Simple Temple anything? After that?
A. After the contract was broken?
Q. Right.
A. No.
COURT: How much remained to be paid under the contract?
A. $3,500, Your Honor.
COURT: And how much did the materials cost you to finish the house?
A. Well, I wouldn't know exactly
. . ..
COURT: In other words, you did not spend any more than the $3,500.00?
A. No.
COURT: You spent any amount less than $3,500.00?
A. It was pretty close to right around $3,500.00, I would say.
BY MR. BELL:
Q. So, you have a completed house?
A. Right.
Q. For about the same money?
A. Yeah."
We thus find that the evidence does not establish fraud. The party alleging fraud has the burden of proving it; fraud is not presumed. LSA-C.C. arts. 1847, 1848; Camp v. Gibbs, 331 So.2d 517 (La.App. 2 Cir. 1976).
In considering the piercing of the corporate veil, the record contains no evidence which would justify such remedy in this case. The language of the court in Hughes Realty Company v. Pfister, 245 So.2d 757 (La.App. 4 Cir. 1971), is apposite here:
"The general rule in Louisiana, as in other states, is that an individual may incorporate his business for the sole purpose of escaping individual liability for corporate debts. This is often a primary or solitary reason for incorporation, but as long as the corporate existence is maintained intact, immunity from liability of a majority shareholder or even a sole shareholder is the same as if there were a multiplicity of shareholders.
"Exceptions to this general rule exist where a shareholder has practiced fraud upon a person through a corporation and where a shareholder disregards the corporate entity to such an extent that the separate individualities of the corporation and its shareholders have ceased to exist, so that the corporation is merely the alter ego of the shareholder or shareholders.

*806 "In the present case, there has been no suggestion that Hughes has perpetrated a fraud or that he has disregarded the corporate entity of any of the three corporations owned by him. No basis has been advanced or foundation established for permitting the defendant to pierce the corporate veil and to prove that John R. Hughes, individually, is the real party in interest and Hughes Realty Company merely a nominal plaintiff." (footnotes omitted).
The case of Texas Industries, Inc. v. Dupuy & Dupuy Developers, Inc., 227 So.2d 265 (La.App. 2 Cir. 1960), answers the appellant's contention that the officers-shareholders were merely the alter ego of the corporation:
"Other exceptions to these rules of nonliability of a shareholder for corporate debts have been recognized where the stockholder is the alter ego of the corporation. For the doctrine of an alter ego to apply, it must be shown that the stockholder whose individual and personal liability for a corporate debt is sought disregarded the entity of the corporation and, thus, made the corporation a mere agency for the transaction of his own private business. Thus, the separate individualities of the corporation and its stockholders must have ceased to exist. Brown v. Benton Creosoting Co., Inc., 147 So.2d 89 (La.App., 2d Cir. 1962cert. denied).
"The doctrine of alter ego does not create assets in a corporation but it simply fastens liability on an individual who uses the corporation merely as an instrumentality in conducting his own personal business. Liability in such instances springs from fraud perpetrated not necessarily on the corporation itself but upon third persons dealing with the corporation. Shreveport Sash & Door Company v. Ray, 159 So.2d 434, 437 (La.App., 2d Cir. 1963). Though the exception to the principle of nonliability of a stockholder is applicable when an individual stockholder in a corporation has utilized the corporate identity as a screen or cover-up of his individual acts or fraud or deception practiced upon the public or the creditors of a corporation, the record in the instant case is barren of proof that A. J. Dupuy, Sr., used the corporation for the advancement of his personal affairs, that he exercised any control over its affairs or operations, or that he received the smallest benefit therefrom. No evidence has been produced warranting a finding of fraud, deception, or ill practice on the part of A. J. Dupuy, Sr."
The appellant's final contention that "equitable considerations" dictate that the officers and directors of Simple Temple, Inc. should be held individually liable on the third-party demand is likewise without merit. The case of Brown v. Benton Creosoting Co., 147 So.2d 89 (La.App. 2 Cir. 1962), writ den. Jan. 14, 1963, relied upon by the appellant to sustain this proposition, was a suit for workmen's compensation benefits in which there was some question about which of two corporations was the employer of the injured employee. The case was not decided on "equity" principles, but on the well established legal principles of corporation law and workmen's compensation law.
The case of Giuffria Realty Company v. Kathman-Landry, Inc., 173 So.2d 329 (La. App. 4 Cir. 1965), also cited on this point by the appellant, was an action styled as an "Action to remove cloud from title," and the case turns on its own peculiar facts, which are entirely different from those in the instant case. The decision in Giuffria Realty Company turned on the legal effect to be given to two transactions in the defendant's chain of title.
Therefore, the trial court's judgment is affirmed at appellant's costs.
AFFIRMED.